UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RENSO NORIEGA, ) | |
| ) | Case No. 3:12-cv-1013 |
| Petitioner, ) | Judge Aleta A. Trauger |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM

The petitioner, Renso Noriega, has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Docket No. 1), with respect to which the government filed a Response in opposition (Docket No. 3), Noriega filed a Brief in support (Docket No. 5), and the United States filed a Supplemental Response (Docket No. 7). For the reasons stated herein, Noriega's motion will be denied.

# BACKGROUND

## I. Relevant Procedural History

Noriega is a legal resident of the United States but is not a United States citizen. On March 31, 2010, Noriega was charged by a third superseding indictment with conspiracy to distribute and to possess with intent to distribute over 5 kilograms of cocaine in violation of federal law. (*See United States v. Noriega, et al.*, Case No. 3:09-cr-0186-10 (hereinafter "Criminal Docket"), Criminal Docket Nos. 342 and 343.) A day later, the court set a change of plea hearing for Noriega. (Criminal Docket No. 341.) After several continuances, including one scheduled plea hearing at which Noriega declined to plead guilty after hearing the government's

1

statement of facts, Noriega submitted an open plea of guilty on September 2, 2010. (*See* Criminal Docket Nos. 369, 372, 385, 386, 394, 395, 419, 426, 451, 454, and 724 (Sept. 2, 2010 plea hearing transcript, hereinafter "Plea Hearing Transcript").) The court reserved acceptance of the plea. (Criminal Docket No. 455 and Plea Hearing Transcript at 13:12-14.)

In preparation for Noriega's sentencing hearing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). In relevant part, the PSR stated as follows: "Although there is no deportation notice currently filed against the defendant, there is a possibility that he may face deportation proceedings as a result of his conviction for the federal offense. If deported, it is recommended that he not reenter the United States without permission." (PSR at p. 18.) The PSR suggested that the court impose the following special condition: "If deported, the defendant shall not reenter the United States without the expressed permission of the Secretary of the Department of Homeland Security. Within 24 hours of returning to the United States, the defendant shall report to the nearest United States Probation Office." (PSR at p. 17.)

In advance of Noriega's sentencing hearing, Noriega's counsel filed a sealed Sentencing Memorandum (Criminal Docket No. 692). In the Sentencing Memorandum, Noriega's counsel urged the court to impose a lower prison sentence because Noriega's "ultimate punishment [] will inevitably involve deportation." (*Id.* at p. 1.) The Sentencing Memorandum was largely devoted to explaining why Noriega's ultimate deportation would essentially constitute punishment in and of itself, because Noriega allegedly had no family ties to Guatemala, because Guatemala is an "inhospitable . . . third-world country," and because Noriega would be at risk of retaliation by a local drug cartel. (*See, e.g.*, *id.* at pp. 2-4.; *see also id.* at p. 3 ("Mr. Noriega's

2

ultimate deportation is worthy of consideration by this Court, because it can mean a life sentence of banishment in addition to the punishment which a citizen would suffer from the identical acts.") (internal quotation omitted); and *id.* ("Mr. Noriega will probably not be able to rejoin his family in the United States . . . . Mr. Noriega's deportation following prison should serve notice that the United States does not tolerate drug trafficking.").) The Sentencing Memorandum emphasized that "Mr. Noriega's plea to a drug conspiracy will result in almost certain deportation," because the offense to which Noriega would plead was an "aggravated felony" that could justify deportation. (*Id.* at p. 2.) Thus, "absent some miracle that counsel has not considered, Mr. Noriega will be deported and will be permanently barred from being admitted into the United States." (*Id.* at p. 3.)

At the outset of the April 7, 2011 sentencing hearing, Noriega acknowledged to the court that he had read the PSR. (*See* Criminal Docket No. 726 (sealed), reproduced under seal at Docket No. 9 in this case (hereinafter "Sentencing Hearing Transcript"), at 3:7-8.) After receiving that acknowledgment, accepting the plea petition, and confirming with Noriega's counsel that there were no objections to the guideline recommendations, the court accepted the PSR as the court's findings of fact on all issues and as to the application of the sentencing guidelines. (Sentencing Hearing Transcript at 3:19-4:2.) Noriega presented one witness in support of his sentencing position, his sister, who testified about the family's remaining financial and familial ties to Guatemala, the family's move from Guatemala to the United States, and the fact that Noriega was only a legal resident of the United States. (*Id.* at 5:23-14:23.) Noriega's sister also testified that Guatemala was a "really dangerous" place where robbery is commonplace and that the Guatemalan police were "scared" of "gang members." (*Id.* at 8:4-21.)

After Noriega's allocution, Noriega's counsel, Patrick Frogge, argued for a mitigated sentence, which led to the following exchange with the court:

> Mr. Frogge: A lifetime banishment is what's going to happen to him, I believe.
>
> The Court: A lifetime?
>
> Mr. Frogge: Banishment. Absent some unforeseen change in immigration laws, that I can't imagine happening, I think that serves as a most specific and general deterrence. I think that the other goals of sentencing are sort of moot when you send somebody to prison and then deport them to a country that they don't know . . . .

(*Id.* at 16:19-17:3.) Mr. Frogge also argued that, because Noriega viewed time away from his family in the United States as punishment, any specific prison sentence that the court imposed would be "arbitrary" because Noriega "probably won't care that much whether it's in prison or Guatemala." (*Id.* at 17:18-21.) Mr. Frogge also argued that Noriega's aunt in Guatemala would not be "much of a stabilizing force," that Noriega "will have no big sister to look out for him in Guatemala," and that "anything that happens after this court date is probably going to be the worst thing he can imagine, which is being away from his family and unable to return." (*Id.* at 18:13-20.) In response, the government argued, among other things, that other defendants sentenced in the criminal conspiracy would similarly be deported because of their convictions, even though each of them had family in the United States. (*Id.* at 20:18-21:3.)

In rendering its sentence, the court considered the potential effects of deportation on Noriega. The court acknowledged Noriega's argument that "his probable deportation and inability to return legally to this country is more of a hardship for him than for some given that his whole immediate family is here," and "that that is an extra punishment for him." (*Id.* 24:11-16.) The court also found that Noriega "does have some family ties to Guatemala" and that he

4

"owns a house there." (*Id.* at 24:17-18.) The court sentenced Noriega to 63 months in prison followed by five years of supervised release. (*Id.* at 25:8-10.) The court then had the following colloquy with Noriega's counsel, which echoed the PSR's admonition concerning the adverse consequences of Noriega's guilty plea on his immigration status:

> The Court: Mr. Frogge, I'm sure you have impressed upon Mr. Noriega how horrible it will go for him if he comes back here and is found, have you?
>
> Mr. Frogge: We had a discussion, yes, Your Honor.
>
> The Court: And I hope his family realizes that too. There is a criminal offense for illegal reentry by an aggravated felon. Mr. Noriega will be considered an aggravated felon. If he's found in this country, he's driving around, he's stopped for speeding, they find out he's here illegally, he will probably be charged by the federal government and have to go to prison again. So I hope you all will bear that in mind, and no one will encourage him to return if he is deported.

(*Id.* at 26:1-15.) Finally, the court specifically addressed Mr. Noriega and referenced his potential deportation: "Mr. Noriega . . . I hope that you are able to have a life in Guatemala if you are deported, and I wish you good luck." (*Id.* at 27:11-12.)

Noriega did not file an appeal, nor did he file any collateral attack concerning his plea or sentence before filing the instant motion.

## II. Noriega's Motion

Noriega contends that the court should vacate his guilty plea because his trial counsel, Patrick Frogge, rendered ineffective assistance of counsel by (allegedly) failing to inform Noriega that his guilty plea could result in deportation from the United States to Guatemala. Noriega argues that he did not learn about the potential consequences of his conviction until July 2012, when prison officials denied Noriega certain privileges because of his immigration status,

5

at which point Noriega consulted with an immigration law firm and allegedly learned for the first time that "he would in all likelihood be deported." (Docket No. 5 at p. 16.)

In response, the government contends that Noriega's motion fails for multiple reasons: (1) the motion is untimely because it was filed after the one-year statute of limitations set forth in 28 U.S.C. § 2255(f) had expired; and (2) even if the motion were timely, Noriega has not met his burden to establish ineffective assistance of counsel, because (a) Mr. Frogge avers that he did in fact advise Noriega that the conviction would likely result in deportation, and/or (b) even assuming that Noriega was not told about those potential consequences, there is no reason to believe that Noriega rationally would have rejected the plea after being so informed.

## **ANALYSIS**

28 U.S.C. § 2255 authorizes a federal prisoner to move the court that sentenced him to vacate, set aside, or correct the sentence for any of several reasons, including where the sentence imposed is "subject to collateral attack." The United States does not dispute that, under *Padilla v. Kentucky*, 559 U.S. 356 (2010), the failure of trial counsel to advise a criminal defendant that his plea carries a risk of deportation constitutes ineffective assistance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1994).

Under 28 U.S.C. § 2255(f), motions filed under § 2255 are subject to a one-year statute of limitations, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme

6

>Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of reasonable diligence.

Here, Noriega's sentence became final on or about April 21, 2011.[1] Noriega filed the instant petition on September 27, 2012, approximately 17 months after the April 2011 sentencing hearing and approximately two years after Noriega had entered his plea of guilty in September 2010. Noriega does not allege that the government prevented him from filing his petition, and the issue of retroactivity is not at issue here.[2] Thus, Noriega's claim is untimely unless he can show that, "through the exercise of reasonable diligence," he could not have discovered that his conviction would likely lead to deportation until after April 21, 2012 – one year from the date on which his sentence became final.

The record conclusively demonstrates that, no later than April 7, 2011, the date of his sentencing hearing, Noriega was aware that pleading guilty could result in his deportation. As the court's recitation of the procedural history shows, Noriega was notified multiple times and in

---

[1] Although not clearly stated by either party, Noriega's sentence presumably was not "final" until his 14-day time limit to appeal had expired. *See* Fed. R. App. P. 4(b)(1). For purposes of this Memorandum, the court will assume that Noriega's sentence became final on April 21, 2011.

[2] In the Brief supporting Noriega's motion, Noriega's counsel in this case has made several erroneous representations concerning the procedural history of the earlier criminal proceedings against Noriega. Among those misrepresentations, Noriega's counsel represented (and appears to have erroneously assumed) that Noriega entered his guilty plea and was sentenced on March 31, 2010, the same date on which the Supreme Court issued *Padilla*. Presumably based on this incorrect assumption, Noriega's counsel briefed the issue of whether *Padilla* should apply "retroactively" to this case. Because Noriega entered his plea on September 2, 2010, five months *after* the Supreme Court issued *Padilla*, the issue of retroactivity is irrelevant to the court's disposition of the instant motion.

multiple ways that his conviction would likely result in deportation. The PSR, which Noriega testified that he had read in advance of the sentencing hearing, specifically warned that his conviction could lead to deportation proceedings. The gravamen of Noriega's argument at sentencing, both in his pre-hearing brief and before the court, was that his prison sentence should be reduced because his likely (perhaps inevitable) deportation to Guatemala was itself sufficient punishment to satisfy the sentencing deterrent function, particularly given Noriega's limited family ties to Guatemala and the risk of retaliation by local criminal elements. In front of Noriega, Mr. Frogge also represented that Noriega's plea would effectively result in "lifetime banishment" from the United States, that it was essentially punitive to "deport" convicts such as Noriega to a "a country that they don't know," that Noriega would suffer because the conviction would render him "unable to return" to see his family in the United States, and that his aunt in Guatemala would not provide the same "stabilizing force" on his life as his family in the United States. In rendering its sentence, the court explained to all present, including Noriega, that it understood and acknowledged his belief that his "probable deportation" constituted "extra punishment" under the circumstances. The court also specifically had Mr. Frogge reiterate, in front of Noriega, that Mr. Frogge had advised Noriega about the likely dire consequences for Noriega if he sought to *re*-enter the United States *after* being deported. In light of those potential consequences, the court specifically urged Noriega's family members, who were present at the hearing, not to encourage Noriega to return "if he is deported." The court also specifically addressed Noriega and wished him good luck "in Guatemala[,] if you are deported . . ."

Noriega's argument that he was unaware of the consequences of his conviction before he

8

spoke with an immigration law firm in July 2012 borders on frivolous and is demonstrably refuted by the record. Indeed, Noriega's Brief supporting the § 2255 petition affirmatively misrepresents the procedural history of this case and fails to reference – let alone attempt to reconcile – the highly relevant and dispositive records in Noriega's criminal case, including the PSR, Noriega's Sentencing Memorandum, and the transcript of the April 7, 2011 hearing.

Because Noriega was on notice by April 2011 that his conviction could result in deportation, the instant September 2012 motion was untimely under the applicable one-year statute of limitations.

A prisoner who files a motion under § 2255 challenging a federal conviction is generally entitled to "a prompt hearing" at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (quoting 28 U.S.C. § 2255(b)). Thus, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Rule 4(b) of the Rules Governing § 2255 Proceedings provides that, if it plainly appears from the face of the § 2255 motion, exhibits, and prior proceedings that the petitioner is not entitled to relief, the judge shall make an order for its summary dismissal. Upon consideration of the original motion and supporting memorandum, the government's responses, and the underlying factual record, the court finds that there are no evidentiary issues to be resolved, that

9

the existing record conclusively demonstrates that Noriega's petition is time-barred, and that an evidentiary hearing is not required. The court will dispose of the motion as the law and justice require. Rule 8(a), Rules Gov'g § 2255 Cases. Therefore, Noriega's petition will be dismissed without an evidentiary hearing.

## **CONCLUSION**

For the reasons stated herein, Noriega's motion will be denied.

Pursuant to Rule 11 of the Rules Governing § 2255 Proceedings, the court must, at the time of entry of this final order denying relief, either issue or deny a certificate of appealability ("COA"). The court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Perkins v. McQuiggin*, 670 F.3d 665, 668 (6th Cir. 2012). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) that the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337. Courts should not issue a COA as a matter of course. *Id.*

Under that standard, the court finds that, because the motion is clearly barred by the applicable statute of limitations, Noriega has failed to make a substantial showing of the denial of a constitutional right with regard to any of the grounds for relief set forth in his motion. The court will therefore decline to issue a COA.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge